UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARCHER DANIELS MIDLAND CO., ADM EXPORT CO., and ADM INTERNATIONAL SARL,<br>    Plaintiffs<br><br>v.<br><br>RESEARCH FUMIGATION CO., LLC, and IMPERIUM INSURANCE COMPANY,<br>Defendants | CIVIL ACTION<br><br>NO.          17-06511<br><br>SECTION:    L(3)<br><br>JUDGE:       FALLON<br><br>MAG. JUDGE:  KNOWLES |

**MEMORANDUM IN OPPOSITION TO IMPERIUM INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

     Plaintiffs, Archer Daniels Midland Co., ADM Export Co., and ADM International Sarl (hereinafter "ADM"), through undersigned counsel, respectfully submit this Memorandum in Opposition to Imperium Insurance Company's ("Imperium") Motion for Partial Summary Judgment (R.Doc. 49). Imperium's Motion for Partial Summary Judgment is based largely on Imperium's misconstruction of its own insuring agreement. Imperium clearly has a duty to indemnify ADM for the sums it owes the vessel owner and for ADM's surveying costs regardless of whether a suit or civil proceeding has been instituted. Furthermore, Imperium's misconstruction of its own insuring agreement and subsequent failure to indemnify ADM for the sums it owes the vessel owner after ADM provided satisfactory proof of loss constitutes bad faith under sections 1892 and 1973 of Title 22 of the Louisiana Revised Statutes.

     At the outset, ADM must bring to the Court's attention and to the attention of the parties to this litigation that, since the time of the filing of Imperium's Motion for Partial summary

Judgment, the vessel owner has finally brought a formal claim against ADM in the High Courts of Justice, Business and Property Courts of England and Wales Commercial Court, Royal Courts of Justice. (Exhibit A, March 26, 2018 Claim Form by Vessel Owner against ADM). This filing unequivocally triggers Imperium's duty to indemnify. This filing may require a continuance of the trial and/or a stay of the litigation pending whether Imperium accepts its duty to defend ADM. Nevertheless, ADM does oppose Imperium's Motion for Partial Summary Judgment, even without reference to the newly filed lawsuit for the reasons set forth herein.

Before ADM turns to the merits of Imperium's Motion, it is important to point out that Imperium's Motion does not affect all of the claims brought by ADM against Imperium. In this case, ADM has brought a tort claim against Research Fumigation for ADM's own damages and has sued Imperium as the insurer of Research Fumigation liable in solido with Research Fumigation for Research Fumigation's liability to ADM. ADM's damages caused by the fault of Research Fumigation properly include surveying costs under the general maritime law. *In re M/V Nicole Trahan*, 10 F.3d 1190, 1196 (5th Cir. 1994); *Gulf Oil Corp. v. Panama Canal Co.*, 481 F.2d 561, 572 (5th Cir. 1973). Imperium has not moved for summary judgment on this issue.

Instead, Imperium's Motion for Partial Summary Judgment concerns only ADM's claim as an additional insured under the Imperium policy. ADM has requested defense and indemnity from Imperium for ADM's liability to the vessel owner for the vessel owner's damages. Imperium incorrectly suggests that neither its duty to defend nor its duty to indemnify have been triggered and that, therefore, Imperium cannot be liable to ADM for its failure to defend and/or indemnify ADM nor for bad faith damages under sections 1892 and 1973 of Title 22 of the Louisiana Revised Statutes.

### I. IMPERIUM'S DUTY TO INDEMNIFY WAS TRIGGERED BY THE DAMAGE TO THE GRAIN ABOARD THE M/V LORENTZOS.

It is uncontested that Imperium issued two commercial general liability policies to Research Fumigation: (1) Imperium Policy No. IIC GL 01809 02 with a policy period from August 1, 2015 through August 1, 2016 and (2) Imperium Policy No. IIC GL 01809 03 with a policy period of August 1, 2016 through August 1, 2017. (Rec. Doc. 49-1, p. 3; Rec. Doc. 49-6). Imperium has admitted that, with respect to the claims of the vessel owner against ADM, ADM is an additional insured under the Imperium policies. (Rec. Doc. 49-3, pp. 2, 13; Rec. Doc. 49-6). As such, ADM is an insured entitled to the coverage afforded under the Imperium policies.

The insuring agreement of these policies is identical and provides, in pertinent part:

> I. Insuring Agreement.
>
> a. We will pay those sums that the insured becomes ***legally obligated to pay as damages*** because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Rec. Doc. 49-4, p. 23) (**emphasis** added).

The insuring agreement is important because it sets forth the duties of the insurer—those duties being (1) the duty to indemnify the insured and (2) the duty to defend the insured. The duty to indemnify is set forth in the first sentence of the insuring agreement, and the duty to defend is set forth in the second paragraph of the insuring agreement.

As set forth above, the duty to indemnify is triggered when "the insured becomes legally obligated to pay as damages." Imperium incorrectly asserts that the terminology "legally obligated to pay as damages" requires either a judgment against the insured or a settlement of a claim against an insured to which the insurer consents. Imperium's construction of this policy language ignores the plain provisions of the Louisiana Civil Code, which provide that a contract constitutes a legal obligation to pay.

By reverting to the text of the Louisiana Civil Code, it becomes clear that a contract alone imposes a legal obligation to pay as damages. Under Louisiana law, "[a]n *obligation* is a *legal* relationship whereby a person, called the obligor, is bound to render performance in favor of another, called the obligee. La. Civ. Code art. 1756. "Obligation arise from contracts." La. Civ. Code art. 1757. An obligation gives the obligee the right to recover damages for the obligor's failure to perform or for his defective or delayed performance. La. Civ. Code art. 1758. "An obligor is liable for the damages caused by his failure to perform a conventional obligation [i.e. a contract]." La. Civ. Code art. 1994. A failure to perform results from nonperformance, defective performance, or delay in performance. *Id.* Simply combining these basic precepts makes it very clear that a contract alone legally obligates to pay damages to an obligee for nonperformance, defective performance, or delay in performance. There is no requirement in these basic Code articles that an actual judgment is required to constitute a legal obligation to pay as damages.

In this case, the charterparty between ADM ("the charterer") and the vessel owner made clear any Cargo Claim damages arising out of "the loading, stowage, lashing, discharge, storage or other handling of the cargo" imposed a legal obligation to pay damages upon ADM to the

vessel owner. (Exhibit B, Time Charter at Clause 42; Exhibit C, Inter-Club Agreement) The charterparty, which incorporates and is governed by the New York Produce Exchange Agreement 1996 (as amended September 2011), imposes the legal obligation to pay damages for Certain Cargo Claims upon ADM:

> **The apportionment**
>
> (7) The amount of any Cargo Claim to be apportioned under this Agreement shall be the amount in fact borne by the party to the charter party seeking apportionment, regardless of whether that claim may be or has been apportioned by application of this Agreement to another charterparty.
>
> (8) Cargo Claims shall be apportioned as follows:
>
> * * *
>
> (b) Claims in fact arising out of the loading, stowage, lashing, discharge, storage or other handling of the cargo:
>
> 100% Charterers

(Exhibit B, Time Charter at Clause 42; Exhibit C, Inter-Club Agreement)

> "Cargo Claims" are defined to mean:
>
> > [C]laims for loss, damage, shortage (including slackage, ullage, and pilferage), overcarriage of or delay to cargo including custom dues or fines in respect of such loss, damage, shortage, overcarriage or delay and include:
> >
> > (a) any legal costs claimed by the original person making the claim;
> >
> > (b) any interest claimed by the original person making the claim;
> >
> > (c) all legal, Club correspondents' and experts' costs reasonably incurred in the defense of or settlement of the claim made by the original person, but shall not include any costs of whatever nature incurred in making a claim under this Agreement or in seeking an indemnity under this charterparty.

(Exhibit C)

As such, the charterparty itself imposes the legal obligation to pay damages upon ADM for damages "arising out of the loading, stowage, lashing, discharge, storage or other handling of the cargo." It is uncontested that the damages to the vessel owner "aris[e] out of the loading, stowage, lashing, discharge, storage or other handling of the cargo." (See Rec. Doc. 50, Pre-trial Order). The only dispute in this lawsuit is whether those damages were caused by the fault of Research Fumigation or another party. However, the resolution of this dispute does not delay, change, or stop the fact that the charterparty itself imposes a "legal obligation to pay as damages" upon ADM and, therefore, triggers Imperium's duty to indemnify without further ado.

Imperium argues that a judgment against the insured is required before the insured can be said to be "legally obligated to pay as damages." Imperium suggests that some caselaw supports their position. However, ADM has properly offered a reasonable and proper interpretation of the policy language. Even if Imperium's position offers a second reasonable interpretation of the policy, the rules of contract interpretation require the Court to adopt ADM's interpretation. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *American International Specialty Lines Insurance Co. v. Canal Indemnity Company*, 352 F.3d 254, 262 (5th Cir. 2003); *Edwards v. Daugherty*, 2003-2103, p. 11 (La. 10/1/04), 883 So. 2d 932, 940-41. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. *Id.* Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. *Id.* Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Id.*

Louisiana caselaw supports that a mere breach of contract can give rise to coverage under a CGL policy. *Stewart Interior Contractors v. Metal Pro Industries, Inc.*, 969 So. 2d 653 (La. App. 4th Cir. 10/10/2007). Any attempt Imperium may make to suggest that the claim of the vessel owner against ADM is barred by any contractual liability exclusion not enumerated in its Reservation of Rights letter has been waived. *Steptore v. Masco Const. Co., Inc.*, 643 So. 2d 1213 (1994). Furthermore, any such attempt would also be barred by the "mend the hold" doctrine as well as by the deadlines imposed by Rule 16. *Berk-Cohen Assocs., LLC v. Orkin Exterminating Co.*, 2004 WL 834639 (E.D. La. April 16, 2004) (Fallon, J.).

As such, it is clear that Imperium's duty to indemnify has been triggered and, as more fully elaborated upon below, that Imperium has failed to honor its duty to indemnify.

**II.  IMPERIUM'S MISCONSTRUCTION OF ITS OWN POLICY LANGUAGE AS WELL AS ITS FAILURE TO PAY ANY PORTION OF THE DAMAGES DUE THE VESSEL OWNER CONSTITUTE BAD FAITH.**

Sections 1892 and 1973 of Title 22 of the Louisiana Revised Statutes provide for bad faith penalties to be assessed against an insurer when the insurer commits certain actions prohibited by the statutes. In this case, Imperium has breached several provisions of the bad faith statutes, specifically La. Rev. Stat. § 22:1892 (A) (2) and La. Rev. Stat. § 22:1973 (B)(1).

Specifically, with regard to La. Rev. Stat. § 22:1973 (B)(1), Imperium has misrepresented the proper interpretation of the terminology "legally obligated to pay as damages," as set forth above. Louisiana jurisprudence is clear that, when there is a dispute over the extent of coverage afforded by an insurance policy, the insurer bears the risk of misinterpreting its own policy and will be liable for penalties for its errors. *Carney v. Am. Fire & Indem. Co.,* 371 So.2d 815, 819 (La. 1979). This court has found that an insurer "must take the risk of misinterpreting its policy

provisions," and that, if an insurer "errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees." *Id.* (citing *Albert v. Cuna Mut. Ins. Soc'y,* 255 So. 2d 170 (La. App. 3d Cir. 1971)). "In other words, insurers should not have their policy provisions interpreted at the expense of the insured, especially when they are charged with knowledge of their policy's contents." *Id.* Both in court pleadings and in its reservation of rights letter (Rec. Doc. 49-3), Imperium has refused to indemnify ADM despite the insuring agreement requiring Imperium to indemnify ADM based on the charter party alone, as set forth above.

With regard to La. Rev. Stat. § 22:1973 (B)(1), it is uncontested that a portion of the grain was damaged and that ADM is contractually liable to the vessel owner for that damaged grain. ADM has, on several occasions, submitted proof of the quantum of the vessel owner's loss to Research Fumigation and Imperium. (Exhibits D, E, & F, ADM Proof of Loss) Neither party has contested the proof of loss or taken any steps to controvert the losses claimed. Imperium's failure to pay the amounts due without any reason constitutes an arbitrary failure to pay. Imperium's failure to pay based on the misconstruction of its own policy also constitutes an arbitrary failure to pay.

**III. ADM IS ENTITLED TO RECOVER ITS OWN SURVEYING EXPENSES AS AN ADDITIONAL INSURED. IN FACT, THE IMPERIUM POLICIES REQUIRED ADM TO PARTICIPATE IN THE SURVEY. REGARDLESS, IMPERIUM TACITLY CONSENTED TO INCUR THE EXPENSE OF ADM'S SURVEY COSTS.**

As aforementioned, ADM's own surveying expenses are an element of damages in ADM's tort claim against Research Fumigation and Imperium. These expenses total $78,586.54 and have been provided long ago. (Exhibit G, Invoices) However, ADM is also entitled to

recover those expenses as an additional insured under Imperium's policy. With respect to that claim, Imperium argues that the claim is an unauthorized defense cost incurred prior to litigation and without the consent of Imperium.

However, Imperium fails to point out that, not only are the surveying costs not unauthorized defense costs, but that its own policies required that ADM participate in the survey in order to fully provide notice to Imperium of the claim. The Imperium policies provide, in pertinent part:

> **2.    Duties in the Event of Occurrence, Offense, Claim Or Suit**
>
> a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1)    How, when and where the "occurrence" or offense took place;
>
> (2)    The names and addresses of any injured persons and witnesses; and
>
> (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

This policy language imposed on ADM a "legal obligation to pay" as that term is understood in the insuring agreement. (See Section I, above)  In order to fully comply with that obligation, ADM was required to participate in and incur surveying expenses in order to determine "[h]ow, when and where the event took place" and then provide notice of same to Imperium.  Because ADM incurred those surveying costs due to its legal obligation to pay, Imperium's duty to indemnify is triggered as set forth in Section I, above.  Imperium, therefore, has a duty to directly indemnify its insured, ADM, for the surveying expenses.

Certainly, at the very least, Imperium tacitly consented to incur the cost of ADM's surveying expenses. Imperium was on notice of the claim. Imperium is legally charged with knowledge of the contents of its own policies that granted ADM additional insured status and also required that ADM participate in the survey to provide full notice to Imperium, as set forth above. Imperium was aware that ADM assigned a surveyor to survey the damages. Imperium did not object to incur the payment for ADM's participation in the survey. In fact, Imperium sent a surveyor on behalf of its own named insured but failed to appoint a surveyor for ADM, an additional insured under the Imperium policy, which would have been customary in these situations.

Furthermore, had ADM not appointed its own surveyor to protect ADM's own rights, Imperium would now be arguing that ADM's failure to appoint a surveyor prejudiced Imperium's rights under its policies and vitiated ADM's claims for coverage. Imperium is attempting to have its cake and eat it too. Imperium's tactics should not be condoned by this Court.

## CONCLUSION

In conclusion, Imperium clearly has a duty to indemnify ADM for the sums it owes the vessel owner and for ADM's surveying costs regardless of whether a suit or civil proceeding has been instituted. Therefore, Archer Daniels Midland Co., ADM Export Co., and ADM International Sarl respectfully request that this Honorable Court deny Imperium's Motion for Partial Summary Judgment.

This 26th day of March, 2018.

Respectfully submitted,

*/s/ Richard D. Bertram*
Richard D. Bertram, T.A. (#17881)
William P. Wynne (#28817)
Hansford P. Wogan (#34825)
Jones Walker LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8334
Facsimile:    (504)589-8334
rbertram@joneswalker.com
bwynne@joneswalker.com
fwogan@joneswalker.com
Attorneys for Archer Daniels Midland Co.,
ADM Export Co. and ADM International Sarl,
Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been served on all parties through their counsel of record by U.S. Mail, postage prepaid, on the 26th day of March, 2018.

*/s/Richard D. Bertram*
RICHARD D. BERTRAM